**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER YANKE,

          Plaintiff,

   v.

CITY OF OAKLAND, et al.,

          Defendants.

_____/

No. C-08-04379 EDL

**ORDER GRANTING DEFENDANTS'**
**MOTION TO DISMISS**

      This action arises out of Plaintiff Christopher Yanke's employment as a police officer with the City of Oakland.  On February 9, 2010, Defendants City of Oakland, Debra Taylor Johnson, Kenneth Parris and Wayne Tucker ("Defendants") filed a Motion to Dismiss Plaintiff's Third Amended Complaint.  Defendants argue that this action is barred by res judicata or, alternatively, that the case should be dismissed for failure to state a claim.  On February 23, 2010, Plaintiff opposed the motion.  On March 16, 2010, the Court held a hearing on Defendants' motion.  For the reasons stated at the hearing and below, the Court grants Defendants' motion without leave to amend.

**Facts**

      Plaintiff has been employed as an Oakland police officer since 1992.  3d Am. Compl. ¶ 16. During his tenure, he has complained that he has been blacklisted and retaliated against for providing testimony regarding a partner's use of excessive force.  3d Am. Compl. ¶ 17.

      After being transferred to the helicopter unit in 2000, Plaintiff attempted to address the "snitch" label that fellow officers had attributed to him.  3d Am. Compl. ¶ 18. In 2000, the Oakland

Police Department investigated Plaintiff for an alleged one hour discrepancy on his time card.  3d Am. Compl. ¶ 19.  Plaintiff was given a five day suspension.  3d Am. Compl. ¶ 21.  In 2001, Plaintiff requested a meeting with his chain of command to address the "snitch" issue.  3d Am. Compl. ¶ 22.  In June 2003, Lieutenant Yee stated at an officer's retirement luncheon that Plaintiff's father was the "only Sergeant Yanke we will ever have at OPD."  3d Am. Compl. ¶ 23.

Several months later, Defendants required Plaintiff to undergo a fitness-for-duty examination.  3d Am. Compl. ¶ 24.  Defendants' medical doctor and psychiatrist, Dr. Raffle,[1] deemed Plaintiff fit for duty .  3d Am. Compl. ¶ 24.  In January 2004, Plaintiff's doctor excused Plaintiff from work due to stress.  3d Am. Compl. ¶ 25.  On March 29, 2005, Dr. Berg cleared Plaintiff for light duty.  3d Am. Compl. ¶ 26.  On April 21, 2005, Dr. Raffle issued a report based on Dr. Berg's letter clearing Plaintiff for light duty.  3d Am. Compl. ¶ 27.  On May 17, 2005, Dr. Raffle issued a second supplemental report stating that Plaintiff was "temporarily not fit for duty for any type of patrol car, on a motorcycle or walking a beat."  3d Am. Compl. ¶ 28.

On June 27, 2005, Plaintiff was assigned to the police department's Information Technology Unit.  3d Am. Compl. ¶ 30.  On December 5, 2005, Plaintiff received an annual performance evaluation which stated that he exceeded expectations in the Information Technology Unit.  3d Am. Compl. ¶ 32.

On February 15, 2006, Tiffany Webb, from the Oakland Police Department medical department, wrote to Plaintiff's supervisor stating that Plaintiff's accommodation in the Information Technology Unit ended that week, and that he must provide a verification from his treating physician to remain in the accommodated position.  3d Am. Compl. ¶ 33.  On February 16, 2006, and in July 2006, Dr. Berg wrote letters confirming that Plaintiff should remain in the Information Technology Unit as an accommodation.  3d Am. Compl. ¶¶ 34, 36.  Plaintiff alleges that while his assignment to the Information Technology Unit was temporary, he believed that there were full-time job assignments open in that Unit and that when he was removed from the Unit, other employees were placed there to do the work that he was doing.  3d Am. Compl. ¶ 35.

---

[1]     Dr. Raffle was a Defendant in this case until the Court granted Dr. Raffle's Motion to Dismiss without leave to amend.  See Aug. 20, 2009 Order Staying Case as to City Defendants and Granting  Defendant Raffle's Motion to Dismiss at 11-13.

United States District Court
For the Northern District of California

On April 6, 2006, Plaintiff filed an investigation request with the Internal Affairs Section, complaining about false statements made by other officers.  3d Am. Compl. ¶ 38.  On June 21, 2006, Plaintiff sent an email to police department officials, including the individual Defendants here, as well as the monitors of the Riders Settlement Agreement informing them of violation of the Internal Affairs policy regarding the timeliness of investigating claims.  3d Am. Compl. ¶¶ 39-40.  Following that email, on June 23, 2006, Plaintiff was ordered to another interview with Internal Affairs, where officers asked questions that Plaintiff contends were not germane to Plaintiff's complaint.  3d Am. Compl. ¶ 42.

On August 11, 2006, Ms. Webb sent Plaintiff an email seeking verification from Plaintiff's doctor that Plaintiff still needed his ADA accommodation.  3d Am. Compl. ¶ 44.  Dr. Berg replied by letter of August 19, 2006 stating that Plaintiff was still in need of the Information Technology Unit accommodation.  3d Am. Compl. ¶ 45.  In September 2006, Plaintiff's accommodation was extended by six months.  3d Am. Compl. ¶ 47.

In October 2006, Plaintiff alleges that an arbitration decision relating to his transfer from the Helicopter Unit was issued.  3d Am. Compl. ¶ 48.  Plaintiff received back pay for the deprivation of his due process hearing regarding transfer from the Helicopter Unit.  3d Am. Compl. ¶ 48.

On October 21, 2006, Oakland police department administratively closed his Internal Affairs complaint.  3d Am. Compl. ¶ 49.

On November 2, 2006, Defendants ordered Plaintiff to another fitness for duty examination.  3d Am. Compl. ¶ 50.  Plaintiff alleges that this fitness for duty examination was not job related or consistent with business necessity.  3d Am. Compl. ¶ 52.  Plaintiff appeared for the examination, but alleges that he was required to sign a release allowing Dr. Raffle to discuss the results of the examination with Defendants, rather than just report as to whether Plaintiff was fit for duty.  3d Am. Compl. ¶ 54.  On November 10, 2006, Dr. Raffle performed a psychiatric fitness-for-duty examination, including administration of the MMPI-2 true/false test consisting of 600 questions.  3d Am. Compl. ¶ 55.  According to Dr. Raffle, Plaintiff did not complete thirty questions on the MMPI.  3d Am. Compl. ¶ 56.  Dr. Raffle was unable to score the test because a leading authority in MMPI-2 interpretation considers a profile invalid when thirty or more questions are unanswered, and because

3

United States District Court
For the Northern District of California

1    Dr. Raffle thought that Plaintiff was trying to hide something. 3d Am. Compl. ¶¶ 56-58. Dr. Raffle

2    found Plaintiff unfit for duty. 3d Am. Compl. ¶ 63. Plaintiff was always ready to complete the test,

3    but was not allowed to do so. 3d Am. Compl. ¶ 64.

4           On December 1, 2006, Plaintiff alleges that he was removed from his full-time position in

5    the Information Technology Unit without a due process hearing. 3d Am. Compl. ¶¶ 65-66.

6    Plaintiff's November 2006 performance review had stated that he exceeded expectations and was

7    fully effective in his job. 3d Am. Compl. ¶ 69. Plaintiff contends that the only rationale for the

8    fitness for duty evaluation was an after-the-fact email stating that since Plaintiff had been on light

9    duty for over one year, the department needed to evaluate his ability to function as a police officer.

10   3d Am. Compl. ¶ 70. Plaintiff was directed to return his gun and badge until he could be found fit

11   for duty. 3d Am. Compl. ¶ 71. On December 19, 2006, the City returned Plaintiff's badge and gun

12   and confirmed that he was still a police officer. 3d Am. Compl. ¶ 72.

13          In February 2007, Defendants offered Plaintiff a civilian job as a latent print examiner,

14   which he refused. 3d Am. Compl. ¶ 73. On June 15, 2007, Defendants reduced Plaintiff's pay to

15   zero. 3d Am. Compl. ¶ 74. On July 3, 2007, Defendants placed Plaintiff on sick leave without pay

16   indefinitely and retroactively to April 1, 2007. 3d Am. Compl. ¶ 75. On July 5, 2007, the City sent

17   Plaintiff a latter claiming to have overpaid Plaintiff for his sick leave and demanded payment of

18   $10,000. 3d Am. Compl. ¶ 76. The City later refused to permit Plaintiff to buy back his accrued

19   compensatory time off. 3d Am. Compl. ¶ 77.

20   **Procedural history**

21          On July 18, 2007, Plaintiff filed a writ of mandamus in the Alameda County Superior Court

22   attempting to overturn the City's decision to remove him from the Information Technology Unit and

23   place him on unpaid sick leave. 3d Am. Compl. ¶ 78; Defs.' Request for Judicial Notice (Defs.'

24   RJN) Ex. A.[2] The petition asserted that Defendants placed Plaintiff on unpaid leave indefinitely

25

26          [2]    Both parties have filed Requests for Judicial Notice and attached various exhibits that they
     request the Court consider in deciding the Motion to Dismiss. On a motion to dismiss, a court normally
27   may not look to matters beyond the complaint without converting the motion into one for summary
     judgment. See Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986), overruled
28   on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104 (1991). There are two
     exceptions to this rule: (1) a court may take judicial notice of material which is either submitted as part

4

**United States District Court**
For the Northern District of California

1    without due process and in violation of his constitutional right to due process.  See Defs.' RJN Ex. A

2    at 1:27-28; 2:1.  The state court denied the writ on February 25, 2008, and Plaintiff appealed that

3    denial on April 24, 2008.  3d Am. Compl. ¶¶ 78-79.

4          This case was filed on September 18, 2008.  On September 23, 2008, the City Defendants

5    filed a motion to dismiss.  On December 19, 2008, Defendant Raffle filed a motion to dismiss.  On

6    January 16, 2009, Defendants withdrew both motions following Plaintiff's filing of an amended

7    complaint.  On January 30, 2009, the City Defendants and Defendant Raffle filed motions to dismiss

8    the First Amended Complaint.  On March 10, 2009, the Court held a hearing on the motions to

9    dismiss, and on March 23, 2009 issued an order granting the motions with leave to amend.

10         Meanwhile, on March 16, 2009, Plaintiff filed a complaint with the Department of Fair

11   Employment and Housing challenging the City's July 2007 decision to put Plaintiff on sick leave.

12   3d Am. Compl. ¶ 81.  On April 2, 2009, Plaintiff filed another complaint with the Department of

13   Fair Employment and Housing challenging the City's demand that Plaintiff complete a fitness for

14   duty examination in November 2006 and that Plaintiff provide medical information that was not job

15   related or consistent with business necessity.  3d Am. Compl. ¶ 82.  Plaintiff received right to sue

16   notices on both complaints.  3d Am. Compl. ¶ 83.

17         On April 6, 2009, Plaintiff filed a Second Amended Complaint as provided in the Court's

18   March 23, 2009 Order, and on April 24, 2009, he filed a Third Amended Complaint by stipulation of

19   the parties.  On May 4, 2009, the City Defendants and Defendant Raffle filed motions to dismiss the

20   Third Amended Complaint.  On June 24, 2009, the Court held a hearing on those motions to dismiss,

21   and following supplemental briefing, the Court issued an order on August 20, 2009, staying the case

22   as to the City Defendants while the state suit proceeded in the court of appeals and granting

23   Defendant Raffle's motion without leave to amend.

24   _____

25   of the complaint or necessarily relied upon by the complaint; and (2) a court may take judicial notice
     of matters of public record.  See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

26   Here, the parties request judicial notice of publicly filed documents and documents that are referenced
     in the third amended complaint.  Neither party questions the authenticity of the submissions.  To the

27   extent that the Court relies on documents contained in the Requests for Judicial Notice, those documents
     are appropriate for judicial notice.  See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) (stating that
     the incorporation by reference doctrine permits the court to consider documents central to the allegations

28   in the complaint and whose authenticity no party questions, but which are not attached to the complaint).

United States District Court
For the Northern District of California

1    On November 30, 2009, the state appellate court affirmed the state trial court's denial of

2    Plaintiff's writ petition.  See Defs.' RJN Ex. E.  At the January 19, 2010 case management

3    conference, the Court gave Defendants leave to file another motion to dismiss.  On February 9,

4    2010, Defendants filed this motion to dismiss Plaintiff's Third Amended Complaint.

5    **Discussion**

6    Defendants argue that res judicata bars Plaintiff's entire action because the primary rights at

7    issue in this case and in the state court action are the same. As described in detail below, the Court

8    agrees that res judicata bars Plaintiff's federal claims because they are based on the same primary

9    right as Plaintiff's claims in the state court litigation.[3]  See Takahashi v. Board of Trustees of

10   Livingston Union Sch. Dist., 783 F.2d 848 (9th Cir. 1986) (applying res judicata to bar federal claim

11   involving same primary right as state court action, the contractual right to employment, and stating:

12   "Even where there are multiple legal theories upon which recovery might be predicated, one injury

13   gives rise to only one claim for relief. . . . By invoking the Constitution and § 1983, Takahashi has

14   merely presented a new legal theory upon which she seeks recovery."); see also Clark v. Yosemite

15   Community College Dist., 785 F.2d 781, 784, 786-87 (9th Cir. 1986) (stating that even though

16   "Clark did not include a Section 1983 claim in [his writ petition], the doctrine of res judicata applies

17   not only to those claims actually litigated in the first action but also to those claims which might

18   have been litigated as part of that cause of action.").  A primary right is defined as "the right to be

19   free from the particular unlawful conduct."  Sawyer v. First City Financial Corp., 124 Cal.App.3d

20   390, 399-400 (1981).  In determining the primary right, "the significant factor is the harm suffered."

21   Agarwal v. Johnson, 25 Cal.3d 932, 955 (1979); International Evangelical Church of the Soldiers of

22   the Cross of Christ v. Church of the Soldiers of the Cross of Christ of the State of California, 54 F.3d

23   587, 590 (9th Cir. 1995) (stating that the Agarwal Court held that "although each case involved the

24

25   [3]    It is well-settled that a mandamus action may preclude further litigation.  See Manufactured
     Home Communities, Inc. v. City of San Jose, 420 F.3d 1022, 1031 n. 12 (9th Cir. 2005) ("Moreover,
26   it is well-settled by the California Supreme Court that 'the doctrine of res judicata applies to judgments
     on the merits in proceedings in mandamus.'  . . . . A mandamus action may, and in this case does,
27   preclude further litigation.") (internal citation omitted); Federation of Hillside & Canyon Associations
     v. City of Los Angeles, 126 Cal.App.4th 1180, 1205 (2004) ("Mata [v. City of Los Angeles, 20
28   Cal.App.4th 141, 149 (1993)] made no attempt to explain, and Petitioners do not explain, why a decision
     in a prior mandamus proceeding should not be res judicata if the requirements for the doctrine are
     satisfied.").

same transaction, the harm suffered by Agarwal for which he was awarded judgment in the state

case was distinct from the harm of employment discrimination; so there was no barrier created by

the federal judgment. What Agarwal alleged as his state causes of action could have been stated as

claims arising from the same transaction on which he sued in federal court; but the California

Supreme Court took no notice of this overlap.") (quoting Agarwal, 25 Cal.3d at 955 ("Under the

'primary rights' theory adhered to in California it is true there is only a single cause of action for the

invasion of one primary right. . . .  But the significant factor is the harm suffered, that the same facts

are involved in both suits is not conclusive.").  However, "[d]ifferent theories of recovery are not

separate primary rights."  Manufactured Home Communities, Inc. v. City of San Jose, 420 F.3d

1022, 1032 (9th Cir. 2005); see also Eichman v. Fotomat Corp., 147 Cal.App.3d 1170, 1174 (1983)

("If an action involves the same injury to the plaintiff and the same wrong by the defendant then the

same primary right is at stake even if in the second suit, the plaintiff pleads different theories of

recovery, seeks different forms of relief and/or adds new facts supporting recovery.") (internal

citations omitted).

Plaintiff argues that the primary right at issue in the writ petition was the right to a due

process hearing for which remedies include back pay, penalties and damages pursuant to California

Government Code §§ 3300, et seq.  He contends that the primary rights at issue here are instead the

right to free speech, the right to be free from retaliation, the right to be free from overly intrusive

medical examinations and the right to continue working at a desk job as a reasonable

accommodation and for which Plaintiff seeks monetary damages, reinstatement, injunctive relief and

a due process hearing.  Defendants counter that the primary right Plaintiff seeks to remedy in both

cases is his continued employment as a police officer.

In the Court's August 20, 2009 Order Staying Case as to City Defendants and Granting

Defendant Raffle's Motion to Dismiss, the Court addressed but did not decide the question of the

primary rights at issue in this case.  After extensive analysis, the Court concluded that: "The primary

rights in Plaintiff's state and federal court actions appear to be the same."  See Aug. 20, 2009 Order

at 11.  Specifically, the Court examined the Ninth Circuit's decision in Takahashi at length, stating:

> The question of whether the same primary rights are involved in Plaintiff's
> state and federal cases is somewhat complicated.  This case most resembles

United States District Court
For the Northern District of California

Takahashi.  There, the plaintiff was a high school teacher who was found to be incompetent to teach by the Commission on Professional Competence and was subsequently terminated.  The plaintiff began a mandamus proceeding in state court to compel the Commission to set aside its decision, which was unsuccessful, as was her direct appeal in state court.  The plaintiff then filed an action in federal court alleging that the school district had violated her Fourteenth Amendment rights and 42 U.S.C. §§ 1981 and 1983 by terminating her and employing job performance evaluation methods that were different than those used to evaluate similarly situated employees.  In affirming the district court's grant of summary judgment for the defendant based on res judicata, the Ninth Circuit determined that the federal action was based on the violation of the same primary right as the state court action, that is, the contractual right to employment.  In focusing on the harm suffered, the court stated:

> Absent termination of her employment contract, Takahashi suffered no harm. Takahashi's allegations of mental distress caused as a result of her dismissal do not present a separate injury.  Rather, any such distress would be a consequence of the District's violation of Takahashi's primary contractual right. Consequential damages cannot support a separate cause of action.
> * * *
> While stating the primary right asserted in her first action in constitutional terms, Takahashi has failed to alleged a new injury. "Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim of relief." By invoking the Constitution and § 1983, Takahashi has merely presented a new legal theory upon which she seeks recovery.

Takahashi, 783 F.2d at 851 (internal citations omitted).  The Takahashi court noted that the plaintiff's emotional distress claim did not raise harm independent of the termination:

> We do not read Takahashi's complaint as alleging any mental distress caused by the District's evaluation of her performance independent of that caused by the District's termination of her employment.

Takahashi, 783 F.2d at 851, n.3; see also Balasubramanian v. San Diego Community College Dist., 80 Cal.App.4th 977, 991-92 (2000) ("The determinative factor in applying the primary right theory was the harm Balasubramanian suffered.  In both the federal and state actions, the harm she alleged was having been rejected for the position of assistant professor.  Although her theory in federal court was discrimination and her theory in state court was breach of contract, both actions involved the primary right to be employed by District.").

Similarly, here, Plaintiff's state and federal cases appear to involve the same primary right against the City Defendants, even though Plaintiff seeks slightly different though largely overlapping remedies.  Plaintiff seeks to address the same harm in both cases, that is, his right to employment.  Also, as in Takahashi, Plaintiff's complaint does not appear to allege any emotional distress against the City Defendants independent of the distress they caused by placing him on indefinite leave without pay.

Aug. 20, 2009 Order Staying Case as to City Defendants and Granting Defendant Raffle's Motion to Dismiss at 8-9.

1       Since the Court's August 20, 2009 Order, the California Court of Appeals decided George v.

2   California Unemployment Insurance Appeals Board, 179 Cal.App.4th 1475 (2009), on which

3   Plaintiff relies to argue that res judicata does not bar this action.  In George, the plaintiff, an

4   administrative law judge, was a civil service employee who was suspended from her employment

5   for two to three weeks on three occasions for a variety of alleged misconduct, from failing to begin

6   hearings on time to being abusive to staff.  See George, 179 Cal.App.4th at 1480-81.  The plaintiff

7   appealed her suspensions to the State Personnel Board ("Board"), alleging that the discipline was

8   inappropriate and unwarranted, but not that it was retaliatory.  See id. at 1480.  In those

9   administrative proceedings, the Board found that the plaintiff's first suspension was not supported

10  by the evidence, that the second suspension was just and proper and that the third suspension was

11  supported only in part by the evidence and was therefore excessive in duration.  See id. at 1481.

12  After exhausting her administrative remedies under the Fair Employment and Housing Act

13  ("FEHA"), the plaintiff filed an action in state court against the defendant alleging that her three

14  disciplinary suspensions constituted retaliation in violation of FEHA.  See id. at 1482.

15      The state trial court denied the defendant's motion for summary judgment, rejecting

16  defendant's argument that because the propriety of the suspensions had already been litigated in an

17  administrative proceeding, the state court action was barred by res judicata.  See George, 179

18  Cal.App.4th at 1482.  The state court of appeals affirmed, finding that there are two distinct rights at

19  stake when a civil service employee challenges discipline or termination on discriminatory or

20  retaliatory grounds: "The primary right protected by the state civil service system is the right to

21  continued employment, while the primary right protected by FEHA is the right to be free from

22  invidious discrimination and from retaliation for opposing discrimination."  See id. at1483 (citing

23  Ruiz v. Department of Corrections, 77 Cal.App.4th 891, 900 (2000)).[4]  The court also stated that:

24  "there is no requirement that a state employee raise the FEHA issue during the administrative review

25  process, and the doctrine of res judicata does not act as a complete bar to a FEHA action when an

26  employee seeks review through an alternative administrative remedy available as a consequence of

27

28          [4]     Ruiz, however, did not involve res judicata.  There, the court held that state employees
    may pursue their claims of employment discrimination with either the Board or the Department of Fair
    Employment and Housing or both.

United States District Court
For the Northern District of California

the employee's civil servant status." Id. at 1484; see also id. at 1479 (holding that: "the doctrine of res judicata does not preclude a state employee from pursuing both internal administrative civil service remedies and those available under the Fair Employment and Housing Act.").

Significantly, the court in George expressly pointed to the "unique circumstances of this case" as leading to the conclusion that the administrative findings did not bar the FEHA claim there. Id. at 1486. George distinguished the state court appellate decision in Takahashi v. Board of Education, 202 Cal.App.3d 1464 (1988), which involves the same procedural history and the same parties as the Ninth Circuit Takahashi case. The procedural history leading up to the final state Takahashi decision is somewhat complex. Takahashi first challenged her termination as a public school teacher at a hearing before the Commission on Professional Competence ("Commission"), which determined that certain of its findings constituted cause for the plaintiff's termination. See Takahashi, 202 Cal.App.3d at 1469-70. The plaintiff subsequently filed a petition for writ of mandate challenging the Commission's finding that there was cause for the plaintiff's termination as a public school teacher and the Commission's jurisdiction. See id. at 1470-71. The state trial court denied the writ, finding that there was a right to terminate the plaintiff due to her incompetence, and the denial was affirmed on appeal. See id. at 1471.

Subsequently, Takahashi filed a federal court action. See id.; Takahashi, 783 F.2d at 851. After the Ninth Circuit upheld the dismissal of Takahashi's complaint in the federal action based on res judicata, she brought two additional state court lawsuits, one alleging breach of employment contract and conspiracy to defraud, and the other alleging wrongful termination through violation of her civil rights, including the First Amendment, due process and equal protection, and race, gender and national origin discrimination. See Takahashi, 202 Cal.App.3d at 1471-72. These two actions were consolidated, and the state trial court granted the defendant's motion for summary judgment, finding that the previous state and federal actions barred the consolidated state court actions on the basis of res judicata. See id. at 1472. The appellate court upheld summary judgment for defendant on the grounds of res judicata:

> All of plaintiff's alleged causes of action in this consolidated action arise in conjunction with or as a result of the alleged wrongful termination of her employment. Indeed, plaintiff specifically alleges that each act complained of caused the dismissal (wrongful discharge, conspiracy, unconstitutional discharge, discharge

10

1   in violation of state civil rights) or was a consequence of the termination (emotional
2   distress, damages), part and parcel of the violation of the single primary right, the
    single harm suffered. . . .  Plaintiff's allegations of consequential injuries are not
3   based upon infringement of a separate primary right.

4   Id. at 1476 (internal citation omitted).

5         In distinguishing the state Takahashi decision, the George court pointed out that in the state

6   Takahashi case, there was a prior administrative finding, upheld by a state court upon denial of

7   Takahashi's writ of mandate, that the employer was justified in terminating the plaintiff, a finding

8   that prevented the plaintiff from pleading a later FEHA claim for wrongful termination.  See

9   Takahashi, 202 Cal.App. at 1474, 1482 ("However, plaintiff is mistaken in believing that it is the

10  administrative proceeding that serves as the bar in this case.  The first action (in the superior court)

11  is the state court proceeding upon which the trial court based its finding of res judicata as to the

12  consolidated actions. . . .  Simply put, plaintiff cannot prevail against defendants on the basis that

13  their conduct toward her that caused her termination was wrongful in the face of a final state court

14  determination in the first action that the district had the right to terminate her for incompetency.").

15  By contrast, in George, the administrative proceeding determined that only some of the disciplinary

16  suspensions were justified, while some were not, so there was no earlier finding that precluded the

17  plaintiff from pleading a later FEHA claim of wrongful termination based on the allegation that the

18  suspensions were retaliatory.  See George, 179 Cal.App.4th at 1479 ("The doctrine of collateral

19  estoppel may act to preclude a retaliation claim if issues decided in the administrative action

20  eliminate a necessary element of the employee's case.  In this case, however, the administrative

21  agency's findings do not eliminate a necessary element of George's retaliation claim.").  Further the

22  George court stated: ". . . we do not believe the [administrative] findings preclude the *entire*

23  retaliation cause of action.  George is not simply challenging an adverse action on the ground that it

24  was discriminatory.  Instead, she has alleged that the Agency accumulated a number of minor

25  incidents and used them collectively to support the suspensions with retaliatory animus. . . . The

26  Board's findings do not resolve these issues in favor of the Agency so as to completely defeat the

27  retaliation cause of action."  Id. at 1487-88 (emphasis in original).

28        This case is more like Takahashi than George.  Here, there has been a determination by a
    state court, rather than only by an administrative body as in George, that the City acted lawfully.

11

1   Also, Plaintiff here did not prevail partially, whereas in <u>George</u>, the administrative proceeding

2   determined that some of the disciplinary suspensions of Plaintiff were unjustified and excessive,

3   both because the plaintiff did not engage in certain acts of misconduct on which some of the

4   discipline was based, and because some of the punishment was excessive.  Further, in <u>George</u>, the

5   plaintiff also alleged additional acts of retaliation.  Here, by contrast, the state appellate court

6   determined that Defendants' conduct was justified.  The appellate court found that Defendants gave

7   Plaintiff adequate notice of the results of the fitness for duty examinations, and there was no dispute

8   that Plaintiff received a copy of the final report or that he was aware of the basis for Dr. Raffle's

9   lack of fitness finding.  <u>See</u> <u>Yanke v. City of Oakland</u>, No. A121526, slip op. at 9, n.4 (Cal. Ct. App.

10   Nov. 30, 2009) (stating that Defendants' standard procedure was to release fitness for duty reports to

11   the employee being examined and Plaintiff did not deny that he received the report before being

12   placed on medical leave).  Thus, the state appellate court reasoned:

13          We agree with the City that it could not indefinitely pay Yanke given his lack of
           fitness to perform as a police officer, and Yanke does not assert or cite any authority
14          supporting a conclusion that he was entitled to work permanently in the Information
           Technology Unit.
15
<u>Yanke v. City of Oakland</u>, No. A121526, slip op. at 9 (Cal. Ct. App. Nov. 30, 2009) (concluding

16   that: "the City's actions were sufficient to provide Yanke with notice that he could not continue to

17   receive his salary and benefits as a police officer because he was unfit to perform the essential duties

18   of his job, with or without accommodation.").  Thus, unlike in <u>George</u>, the prior state court decision

19   in this case, opining that Defendants' actions were justified because Plaintiff lacked fitness for duty

20   as a police officer and had no right to indefinite modified duty, precludes Plaintiff from proving his

21   claims in this case.

22          Plaintiff argued at the hearing that he did not present evidence in the state court action

23   regarding the ability to work permanently in a modified duty position, so the appellate court's

24   decision is not dispositive of that issue.  However, as Plaintiff conceded at the hearing, he could

25   have brought his FEHA claims in the state court proceeding, but chose not to.  Under basic

26   principles of res judicata, a prior adjudication bars claims that were brought or could have been

27   brought in that prior action.  <u>See</u> <u>Clark</u>, 785 F.2d at 784, 786-87.  Plaintiff cites no authority to the

28   contrary.  The "unique circumstances" present in <u>George</u> are not present in this case.  Therefore,

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   George does not control.

2        Plaintiff also relied on Agarwal to argue that res judicata does not bar this action.  In

3   Agarwal, the Supreme Court determined that a judgment entered in a federal case that proceeded to

4   trial on the plaintiff's individual and class claims of race discrimination pursuant to Title VII did not

5   bar the state court appeal from proceeding on the plaintiff's tort claims for defamation, intentional

6   infliction of emotional distress and interference with business relationships.  See Agarwal, 25 Cal.3d

7   at 955 ("Our review of the district court's findings of fact discloses that its attention was primarily

8   directed to McKee's employment practices and the corresponding impact on racial minorities, and to

9   statistical analyses of the McKee employee population. Although Agarwal's state court claims for

10  defamation and intentional infliction of emotional distress arose in conjunction with the alleged

11  violation of title VII, the fact remains that in the present action he was awarded damages for harm

12  distinct from employment discrimination.").  The state Takahashi court distinguished Agarwal on

13  several bases that also distinguish Agarwal from the instant case.  In Agarwal, unlike here, the

14  plaintiff was terminated from private employment without notice; he was notified on September 25,

15  1970 that he had been terminated one week earlier.  Further, the plaintiff's former employer made

16  unfavorable comments about him to prospective employers after the termination.  Agarwal's federal

17  court action on his employment discrimination claims concluded before his earlier-filed state court

18  tort action went to trial.  The Agarwal court concluded that the federal court action was not res

19  judicata as to the issues in the state court action because the harm for which Agarwal recovered

20  damages in the state court action was different.  By contrast, here, both Plaintiff's federal and state

21  court cases arose in conjunction with Defendants' alleged wrongful conduct in placing Plaintiff on

22  indefinite leave without pay.  There are no allegations that Defendants engaged in other actionable

23  conduct, such as the post-termination defamatory comments made by the employer in Agarwal.

24  Accordingly, here, as in Takahashi, Plaintiff's allegations of harm are not based on infringement of a

25  primary right different from that alleged to have been infringed in the state court action.

26        Accordingly, pursuant to the federal and state Takahashi cases, the primary rights in the state

27  court action and this action are the same, that is, the wrongfulness of the City's conduct in placing

28  Plaintiff on indefinite medical leave.  Therefore, this action is barred by res judicata.  Because the

res judicata issue is dispositive, the Court need not reach the remaining bases for Defendants'
motion to dismiss.

**IT IS SO ORDERED.**

Dated:  March 30, 2010

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge

**United States District Court**
For the Northern District of California